UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TANK TECH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:07CV20 HEA |
| | ) |
| LAD NEAL, | ) |
| | ) |
| Defendant. | ) |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment on Count IV of Plaintiff's Petition, [Doc. 42]. Count IV seeks damages for an alleged violation of the Missouri Uniform Trade Secrets Act. Plaintiff opposes the Motion, however, it recognizes that this Court's July 23, 2007 Opinion Memorandum and Order and its November 14, 2007 denial of Plaintiff's Motion for Contempt and Reconsideration likely resolve the motion.

## Summary Judgment Standard

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v.*

*City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th .Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell* , 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative

evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). Viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, when there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir.2006).

## **Facts and Background**

The facts and background of this matter have been previously set forth in the Court's July 23, 2007 Order and are partially repeated here for the purpose of fluidity.

> Plaintiff Tank Tech is a Missouri corporation based in Blodgett, Missouri. It is in the business of retrofitting/lining, inspection and repair of above ground and underground storage tanks for the petroleum industry. David Russell is Plaintiff's owner and President. In the early 1990's Russell's company began doing business as Tank Tech, Inc. Plaintiff conducts its business in several states throughout the United States. In 1999, Plaintiff began utilizing a lining and retrofitting system known as the Phoenix Secondary Containment System.[1] This system consists of an epoxy coating on the interior

---

[1] Installing a double-wall containment system in an existing tank is often referred to as "retrofitting" or "lining" the tank. The containment system at issue in this case has been variously referred to as "double-wall tank lining," the "primary containment system," the "secondary

lining of the tanks, followed by an interstice material known as Parabeam followed by another coating of epoxy. Parabeam is a cloth-like material that comes in 250-pound rolls. Workers roll Parabeam onto the inside walls of the tank and cover it with resin. This resin causes the cloth to expand and harden, creating a rigid interior wall and an interstitial space as it dries. Workers then spray an epoxy coating on top of this wall to form a thick layer of protection on the inside of the tank. Plaintiff purchases the Parabeam material from ZCL USA and the coating material from Bridgeport Chemical in Florida. In early 2004, Plaintiff became the only authorized installer of the Phoenix System in the State of Florida. Because of this exclusive authorization and the resultant growth in its business, Plaintiff has established an office in Florida.

Petrofuse, Inc. is a European-based corporation that started doing business in the United States in 2006. In Europe, Petrofuse's business has focused on the set-up of convenience stores and the sale and installation of fuel dispensers and piping. Its sister corporation, GraphiteUK, has been in the business of lining and retrofitting fuel storage tanks. In the United States, the company is operating all aspects of its business--fuel dispensers, piping and retrofitting of tanks--under the name "Petrofuse." Petrofuse creates its interstice with a stiff material called Cordek. Cordek is manufactured in 4' x 8' sheets, like plywood. The material resembles corrugated cardboard, but looks and feels like plastic. It is similar to the material used to make mail crates. Workers use double-sided tape to attach the Cordek to the inside walls of the tank, then cover the Cordek with layers of fiberglass and epoxy to create the inner wall of protection.

Florida law requires all underground fuel storage tanks to be equipped with double-wall, active-monitoring secondary containment systems before 2010. Gas stations and convenience stores can comply

---

containment system," "PCS" and the "Phoenix System." All of these terms are essentially synonymous, with the Phoenix system being a trade name for the Parabeam double-wall retrofitting process.

with this mandate by either retrofitting existing tanks or installing new tanks with secondary containment.

      Defendant was first employed by Plaintiff in 1996 as a part-time welder. IN 2001, he went to work full-time for Plaintiff. Once employed full-time, Defendant began working in the field for Plaintiff performing work in preparation of, and in lining of, retrofitting underground storage tanks, as well as storage tank inspection. By the middle of 2002, Defendant was promoted to foreman. His job as construction superintendent required supervising three (3) Tank Tech construction crews.

      Frank McLeod was, at one time, in the tk lining business. He owned a tank lining company in South Carolina known as Sub-Com. McLeod sold his business and ultimately went to work as a manufacturer's representative for a company known as F&W Components. ON August 18, 2003, F&W Components entered into an exclusive applicator representative agreement with Tank Tech whereby F&W Components would market, sell and arrange for installation of certain products of Tank Tech in the Florida market. In July, 2006, F&W Components terminated its contract with Tank Tech. Prior to this termination, F&W Components was in discussions with GraphiteU.K. the discussion centered around forming a company in the United States to install not only Petrofuse piping systems, but the sales and installation of Petrofuse's secondary containment systems. In late September, 2006, David Russell learned that McLeod and F&W Components' owner, Roger McKelvey, might be working for a competitor in the State of Florida and might try to solicit Tank Tech employees. Russell contacted Defendant in early October and told him not to talk to McLeod or McKelvey and also to advise all other Tank Tech employees in Florida of the potential solicitation of Tank Tech employees.

      McLeod and Defendant met in early October, 2006.they discussed the possibility of Defendant working for Petrofuse. Defendant informed a Tank Tech co-employee, Dave Hammon, that he was going to work for Petrofuse. On December 3, 2006, Defendant

emailed Petrofuse manager Chris Nichols that he planned to send in his resignation on December 23, as soon as he got his bonus.

Shortly after Defendant's resignation, Plaintiff discovered that on November 28, 2006, Defendant emailed form his Tank Tech email address to his personal email address numerous photographs of a Tank Tech worksite depicting among other things Tank Tech's eductor system, the equipment layout of Tank Tech's work trailers, photographs of Tank Tech's completed designed square man ways, and photographs of other tools and devices utilized by Tank Tech. These photographs were provided by Defendant to Chris Nichols. On December 3, 2006 Defendant emailed from his Tank Tech email address to his personal email address a preconstruction checklist for a Circle K convenience store job. He also emailed Tank Tech's list of items needed and items used for all Tank Tech job sites.

Defendant was employed by Plaintiff as a construction foreman until December 28, 2006, when he resigned. As a condition of his continuing employment, Defendant executed a Non-Compete Agreement on September 6, 2005, which provides, in pertinent part:
> [Neal agrees] that on termination of employment for any cause whatsoever, [he] will not directly or indirectly engage or accept employment in any competition business that promotes any services that competes with Tank Tech, Inc. . . [Neal] shall not share trade secrets with out [sic] written consent of Tank Tech, Inc. management.
>
> [Neal also agrees] not to be connected with or employed by any person, firms or corporation engaged in any competition business with Tank Tech, Inc. All terms of this agreement shall be for a period of 5 (five) years from the date his or her employment closes with Tank Tech, Inc. This agreement covers all areas of the continental United States.

> This agreement encompasses all facets pertaining to the
> operation of tank Tech, Inc. Including working categories
> of administration, clerical and physical labor.
>
> Defendant began working for Petrofuse in January, 2007 in the State of Florida. On January 4, 2007, Plaintiff filed its Petition in the Missouri State Court, in which it alleged Defendant misappropriated its trade secrets. The matter was removed to this Court based on the Court's diversity of citizenship jurisdiction.

Opinion, Memorandum and Order, July 23, 2007.

### **Discussion**

Defendant now seeks summary judgment on Count IV, which alleges that Defendant misappropriated a variety of Plaintiff's trade secrets. As Defendant correctly sets forth, the Missouri Uniform Trade Secrets Act defines a "trade secret" as:

> information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, form not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value form its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mo.Rev.Stat. § 417.453 (2000). See also, *Lyn-Flex West, Inc. v. Dieckhaus,* 24 S.W.3d 693, 697-698 (Mo.App.1999)(A "trade secret," according to Missouri law, is information-including but not limited to-technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use). Furthermore, in order to be considered a trade secret, the information must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Conseco Finance Servicing Corp. v. North American Mortgage Co.* 381 F.3d 811, 818-819 (8th Cir. 2004).

As the Court determined from the evidence presented at the trial on Counts II and III, Plaintiff failed to establish the existence of any trade secrets. As such, Defendant is entitled to summary judgment on Count IV seeking damages for misappropriation of trade secrets.

## Conclusion

Based on the record in this matter, there exists no genuine issues of material fact remaining as to the alleged trade secrets. The evidence presented throughout the course of the hearing on Plaintiff's motion for preliminary and permanent injunction failed to satisfy the elements necessary to establish that Plaintiff has

protectable trade secrets.  *Ergo,* Plaintiff is not entitled to damages for misappropriation of trade secrets.  Defendant is therefore entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary and Permanent Injunction is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's request for attorney's fees as damages on the injunction bond is **DENIED**.

Dated this 6th day of February, 2008.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE